JUDGE CASTEL

26 CV 05911

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION AND NATIONAL
FOOTBALL LEAGUE PLAYERS
INCORPORATED,

Petitioners,

v.

SABER INTERACTIVE INC.,

Respondent.

Case No.

**PETITION TO CONFIRM
ARBITRATION AWARD**

Petitioners National Football League Players Association ("NFLPA") and National Football League Players Incorporated ("NFLPI" and, together with the NFLPA, "NFLPA/PI"), by their attorneys, hereby petition this Court, pursuant to Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, to confirm the final arbitration award rendered on May 22, 2026 ("Corrected Final Award") by a three-member panel of J.A.M.S. neutral arbitrators seated in New York, New York ("Panel"), in accordance with the May 23, 2023 license agreement between the parties ("License Agreement" or "Agreement") and the arbitration rules and procedures set out in the J.A.M.S. Comprehensive Arbitration Rules & Procedures ("J.A.M.S. Rules") incorporated therein.

## JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because this lawsuit involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 9 U.S.C. § 9 because the place of arbitration was New York, New York, and the Corrected Final Award was rendered in this District. *See* Ex. 1 (Corrected Final Award) at 1.

3.    This Court has personal jurisdiction over Respondent Saber Interactive Inc. ("Saber") because Saber consented to jurisdiction in this District by agreeing to arbitrate in New York and participated in the arbitration proceedings in New York from which the Corrected Final Award arose. *See Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996) ("A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction.").

2

## PARTIES

4.      Petitioner NFLPA serves as the duly recognized labor union for over 2,000 professional football players in the NFL. The NFLPA is a non-profit corporation organized under the laws of the State of Virginia with its principal place of business in Washington, D.C.

5.      Petitioner NFLPI is the for-profit licensing and marketing arm of the NFLPA that, among other things, markets and sells licenses to consumer-product manufacturers to use the names, likenesses and other identifying attributes of NFL players. NFLPI is a corporation organized under the laws of the State of Virginia with its principal place of business in Washington, D.C. All NFL players assign to NFLPA/PI the exclusive right to license their identity rights to third parties for use in various consumer products, including video games, trading cards and apparel.

6.      Respondent Saber is a worldwide video game publisher and developer. Upon information and belief, Saber is a corporation organized under the laws of the State of Delaware with its principal place of business in Florida.

## STATEMENT OF FACTS

7.      On May 23, 2023, the parties executed the License Agreement. Through the License Agreement, NFLPA/PI and their agent OneTeam Partners (together, the arbitral "Claimants") granted Saber the right to use the names, images, likenesses, jersey numbers and other identifying attributes of NFL players and the NFLPA's logos in the creation of one arcade-style "multiplayer football game"—until the date of the License Agreement's expiration, February 28, 2026, unless earlier terminated in accordance with the Agreement's terms.

8.      In exchange for their intellectual property rights, Saber agreed to pay Claimants royalties on game sales subject to certain minimum guaranteed payments to be remitted in

3

installments over the life of the License Agreement.

9.    Section 10.B. of the License Agreement (titled "Dispute Resolution") contains the agreed-upon procedures "[i]f any dispute ar[ose] relating to either Party's rights or obligations under th[e] Agreement, and the Parties [we]re unable to resolve the dispute in the ordinary course of business." Ex. 2 (License Agreement) § 10.B. If attempts to resolve the disagreement failed, "the dispute [would] be finally resolved by binding arbitration in accordance with the Comprehensive Arbitration Rules and Procedures of J.A.M.S." *See id.* The parties further agreed that the arbitration would be held before three neutral persons experienced in intellectual property licensing and product distribution and would take place in New York, New York, unless otherwise agreed among the parties. *Id.*

10.    The parties also expressly agreed that "judgment on the arbitration award may be entered in any court having jurisdiction thereof." *Id.*

11.    On September 30, 2024, Claimants invoked their right to terminate the License Agreement after Saber stopped paying the guaranteed amounts owed under the Agreement and failed to timely cure such breaches. Relevant here, "Section 11.H of the License Agreement provides, ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████"[1] Ex. 1 at 18–19. Further, the License Agreement and New York law provide for interest payments for past due amounts. *See id.* at 17–18.

12.    On November 19, 2024, pursuant to the License Agreement's dispute resolution procedures, Claimants filed a Demand for Arbitration ("Demand") with J.A.M.S. to address

---

[1] Saber conceded during the arbitration that Section 11.H. provides for an award of costs, including attorneys' fees, incurred in the collection of outstanding payments—the exact costs Petitioners are now being forced to incur in seeking to confirm the Corrected Final Award.

4

Saber's failure to comply with its payment obligations under the License Agreement and its continuing use of NFLPA/PI's intellectual property post-termination.

13. Claimants' Demand asserted four causes of action against Saber: (i) breach of contract; (ii) trademark infringement, false designations of origin, false endorsements, false advertising and passing off under the Lanham Act; (iii) misappropriation of rights of publicity; and (iv) declaratory judgment.

14. On December 17, 2024, Saber filed a Response to the Demand, which asserted counterclaims against Claimants for (i) fraud; (ii) fraud in the inducement; (iii) breach of the duty of good faith and fair dealing; and (iv) breach of contract. Saber amended its Response and Counterclaims on April 14, 2025, and withdrew its standalone fraud claim.

15. Pursuant to J.A.M.S. Rules, J.A.M.S. provided the parties with a list of ten neutral arbitrator candidates, each of whom represented that he or she had the requisite experience in licensing and product distribution and referred the parties to the candidates' biographies on J.A.M.S.' website for the purpose of assessing their respective qualifications and credentials. Each side was then permitted to strike three names from the list and rank the remaining candidates in order of preference.

16. J.A.M.S. appointed the three remaining arbitrators with the highest composite ranking (the Panel): (i) Ms. Caroline Antonacci, Esq. (Panel Chair) (former Director and Special Master for the New York State Supreme Court, Appellate Division, First Department's Special Masters Mediation Program with nearly 25 years of experience as a mediator, arbitrator and special master); (ii) Hon. Theodore H. Katz (Ret.) (United States Magistrate Judge in the Southern District of New York for 21 years); and (iii) Ms. Vivien B. Shelanski, Esq. (J.A.M.S. panelist for over 25 years).

17.    No party objected to any member of the Panel.

18.    Several months of discovery ensued. Claimants sought sanctions over Saber's discovery conduct, and "the Panel was troubled by [Saber's] discovery efforts and production." Ex. 1 at 12. Thereafter, "the Parties jointly requested permission to brief what they acknowledge[d] [wa]s the 'core issue' in this Arbitration and contend[ed] c[ould] be resolved as a matter of law without an evidentiary hearing." *Id.* at 6. Specifically, "[t]he Parties were granted permission to brief the following question: 'What if any monies are owed to Claimants pursuant to the Minimum Guaranteed Payments provision of the License Agreement?'" *Id.*

19.    The Panel thus granted leave for the parties to file the following motions: (i) Claimants' motion seeking sanctions for Saber's discovery violations and/or dismissal of Saber's counterclaims on the merits, and (ii) the parties' cross-motions for summary disposition on the merits of Claimants' breach-of-contract and declaratory-relief claims. *Id.* The parties thereafter cross-moved for summary disposition, filed six briefs, and the Panel heard oral argument on October 21, 2025. *See id.* at 6–7.

20.    On November 11, 2025, the Panel issued an interim award ("Interim Award") (*see* Ex. 3) granting Claimants' motion for summary disposition on the merits of their breach-of-contract claim and granting Claimants' motion to dismiss Saber's counterclaims, finding that Saber's contractual arguments for not paying all guaranteed amounts were "strained" and erroneous and that Saber's counterclaims were meritless as a matter of law. *See id.* at 9–10. The Panel denied as moot Claimants' motion seeking sanctions for Saber's discovery violations and denied with prejudice Saber's motion for summary disposition as to Claimants' claims. *See id.*

21.    The Interim Award indicated that the Panel's "further determinations" would be "embodied in a Final Award which [would] also incorporate the contents of the Interim Award."

*See id.* at 14.

22.     On November 17, 2025, Claimants withdrew their Lanham Act and right-of-publicity claims so that the only remaining issues in the arbitration were the amount of damages, interest, disbursements and costs, and attorneys' fees Saber owed Claimants. *See* Ex. 1 at 15–16.

23.     The Panel thereafter held a status conference, the parties submitted four more briefs on the remaining issues, and the Panel held oral argument on January 15, 2026. *See id.* Following oral argument, the Panel ordered yet more briefing concerning Claimants' requests to recover their costs incurred in collecting the outstanding amounts owed by Saber as well as interest on the outstanding guaranteed payments. *See id.* at 16.

24.     The parties made those submissions as requested, and the record was closed and submitted for final determination on March 2, 2026. *See id.*

25.     On March 29, 2026, the Panel published its final award ("Final Award"). The parties did not receive the Final Award until April 30, 2026.[2] The Final Award was subsequently corrected on May 22, 2026. *See generally id.* The 21-page Corrected Final Award, like the Final Award, "merged and incorporated" the Interim Award addressing liability issues and also addressed the amount of damages, interest, attorneys' fees, costs and expenses (including J.A.M.S. arbitration fees, costs, and Panel compensation and expenses) Saber owes Claimants. *See id.* at 3.

26.     The Corrected Final Award held that Saber owes Claimants:

- $1.75 million in outstanding guaranteed payments under the License Agreement;

- Interest on three of the outstanding guaranteed payments at the rate set forth in the

---

[2] The month-long lapse was a result of Saber stating it would not pay an outstanding J.A.M.S. bill. As a result, Claimants were forced to pay that amount (for Saber) in order for J.A.M.S. to release the Final Award. The Corrected Final Award served to update the amount owed by Saber to reflect that Claimants had been forced to pay the invoice on Saber's behalf. The Corrected Final Award also included typographical changes.

License Agreement (totaling $286,774.19 as of May 22, 2026);

- Interest on six of the outstanding guaranteed payments at the rate set forth in N.Y. C.P.L.R. § 5004 (totaling $172,947.93 as of May 22, 2026);

- $878,216 in attorneys' fees;

- $40,936 in disbursements and costs; and

- $102,953.69 in J.A.M.S. arbitration fees, costs and Panel compensation and expenses.

*See id.* at 3, 20–21.

27.    The Panel specified that "Claimants are awarded pre-award and post-award interest at the rates set forth [in the Corrected Final Award], accruing from the date payment was due or became due based on acceleration due to termination, *and continuing until the amounts owed by Respondent are paid in full.*" *Id.* at 18 (emphasis added).

28.    Consistent with the License Agreement, the Corrected Final Award "resolves all issues submitted for decision in th[e] proceeding and is in full settlement of all claims submitted to th[e] Arbitration." *See id.* at 21.

29.    J.A.M.S. officially closed the matter on June 3, 2026.

30.    Saber has not complied with the Corrected Final Award and has indicated that it has no intention of doing so.[3]

---

[3] On May 9, 2026, Saber paid Claimants $1,440,500 via wire transfer in purported "accord and satisfaction" (UCC § 3-311) of all of its obligations. But this amount does not, in fact, "satisfy" all of Saber's payment obligations under the Corrected Final Award and fails to constitute accord and satisfaction as a matter of law. *See, e.g., Merrill Lynch Realty/Carll Burr, Inc. v. Skinner*, 473 N.E.2d 229, 232 (N.Y. 1984) (noting that accord-and-satisfaction "agreements are enforceable [] only when the person receiving the *check* has been *clearly informed* that acceptance of the amount offered will settle or discharge a *legitimately disputed unliquidated claim*") (emphases added) (citations omitted); *Banque Worms v. BankAmerica Int'l*, 570 N.E.2d 189, 195 (N.Y. 1991) (explaining that wire transfers are not among the types of "instruments" governed by UCC Article 3). In any event, Claimants do not intend to keep the money wired by Saber and will tender repayment within 90 days after Saber's attempted accord. Saber thus cannot establish discharge

## COUNT I

### CONFIRMATION OF ARBITRATION AWARD

31.    NFLPA/PI repeat and reallege paragraphs 1 through 30 hereof, as if set forth fully herein.

32.    The Panel issued the Corrected Final Award in accordance with the parties' binding arbitration agreement set forth in the License Agreement.

33.    The Panel conducted the proceedings and issued the Corrected Final Award in full compliance with the FAA.

34.    NFLPA/PI were parties to the arbitration and are entitled to apply to the Court for an order confirming the award.

35.    NFLPA/PI bring this action within one year of the delivery of the Corrected Final Award (May 22, 2026).

36.    By reason of the foregoing, NFLPA/PI are entitled to confirmation and enforcement of the Corrected Final Award and entry of judgment in accordance with the Corrected Final Award pursuant to 9 U.S.C. § 9.

### PRAYER FOR RELIEF

**WHEREFORE**, NFLPA/PI respectfully request that this Court enter an Order:

(a) Confirming the Corrected Final Award and entering judgment thereon;

(b) Awarding attorneys' fees and costs arising out of this proceeding pursuant to the License Agreement (*see* Ex. 2 § 11.H.) and applicable law; and

(c) Granting NFLPA/PI such other and further relief as the Court deems just and proper.

---

by accord and satisfaction. *See* UCC § 3-311(c)(2).

Dated:  July 13, 2026

Respectfully submitted,

**WINSTON TAYLOR LLP**

/s/ _____

David L. Greenspan
Sarah L. Viebrock
Neha Vyas
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
david.greenspan@winstontaylor.com
sarah.viebrock@winstontaylor.com
neha.vyas@winstontaylor.com

*Counsel for Petitioners NFLPA and NFLPI*