**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION AND NATIONAL FOOTBALL LEAGUE PLAYERS INCORPORATED, <br><br>             Petitioners, <br><br>     v. <br><br> SABER INTERACTIVE INC., <br><br>             Respondent. | Case No. 1:26-cv-05911-PKC |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO CONFIRM ARBITRATION AWARD</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................................... 2

      A.    The Parties ............................................................................................................... 2

      B.    The License Agreement and Agreement to Arbitrate............................................... 2

      C.    The Dispute ............................................................................................................. 3

ARGUMENT .................................................................................................................................. 7

      A.    The Corrected Final Award Should Be Confirmed. ................................................ 7

      B.    NFLPA/PI's Reasonable Attorneys' Fees and Costs for Commencing This Action
            Should Be Awarded.................................................................................................. 9

CONCLUSION................................................................................................................................11

i

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*All. Cap. Int'l Bank v. Wadiah Cap.*,
2025 WL 437618 (S.D.N.Y. Feb. 7, 2025)................................................................................1

*Carroll v. Wells Fargo Clearing Servs., LLC*,
2021 WL 634721 (S.D.N.Y. Feb. 17, 2021).............................................................................8

*CFS 12 Funding LLC v. Wiesen*,
2023 WL 6458929 (S.D.N.Y. Oct. 4, 2023).............................................................................9

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
333 F.3d 383 (2d Cir. 2003)....................................................................................................7

*Evan K. Halperin Revocable Living Tr. v. Charles Schwab & Co.*,
2022 WL 4334655 (S.D.N.Y. Sept. 19, 2022), *aff'd*, 2023 WL 8253681 (2d
Cir. Nov. 29, 2023) ..................................................................................................................9

*Evan K. Halperin Revocable Living Tr. v. Charles Schwab & Co. Inc.*,
2023 WL 8253681 (2d Cir. Nov. 29, 2023).............................................................................8

*Herrenknecht Corp. v. Best Rd. Boring*,
2007 WL 1149122 (S.D.N.Y. Apr. 16, 2007)..........................................................................9

*Kane v. Nat'l Farm Wholesale Fruit & Vegetable Corp.*,
2019 WL 1585101 (S.D.N.Y. Apr. 12, 2019)..........................................................................9

*Koonge v. Citibank, N.A.*,
2026 WL 1735180 (S.D.N.Y. June 16, 2026) .........................................................................7

*Legacy Agency, Inc. v. Maulini*,
2025 WL 3551559 (S.D.N.Y. Dec. 11, 2025) .........................................................................1

### Statutes

9 U.S.C. § 9...........................................................................................................................1, 7, 8

9 U.S.C. § 10(a) ........................................................................................................................8, 9

**PRELIMINARY STATEMENT**

Petitioners National Football League Players Association ("NFLPA") and National Football League Players Incorporated ("NFLPI" and, together with the NFLPA, "NFLPA/PI"), by their attorneys, hereby petition this Court, pursuant to Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, to confirm the arbitration award rendered on May 22, 2026 ("Corrected Final Award") by a three-member panel of J.A.M.S. neutral arbitrators seated in New York, New York ("Panel"), in accordance with the arbitration rules and procedures set forth in Section 10.B. of the May 23, 2023 license agreement between the parties ("License Agreement" or "Agreement").

The neutral Panel—including a former Magistrate Judge from this Court—conducted rigorous proceedings and issued a comprehensive and well-reasoned arbitral award. Respondent Saber Interactive Inc. ("Saber"), however, has indicated it will not comply with the Corrected Final Award, just as it did not comply with the underlying License Agreement. Pursuant to the FAA, the Corrected Final Award should be confirmed. *See, e.g.*, *All. Cap. Int'l Bank v. Wadiah Cap.*, 2025 WL 437618, at *2 (S.D.N.Y. Feb. 7, 2025) ("The confirmation of an arbitration award pursuant to section 9 of the FAA is normally 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'") (citations omitted). In addition, this Court should award NFLPA/PI their attorneys' fees and costs incurred in pursuing this action to confirm an unassailable arbitration result. *See, e.g.*, *Legacy Agency, Inc. v. Maulini*, 2025 WL 3551559, at *2 (S.D.N.Y. Dec. 11, 2025) (awarding "attorney's fees and costs associated with [a] confirmation action" in accordance with the parties' agreements).

1

## FACTUAL BACKGROUND

### A.    The Parties

Petitioner NFLPA serves as the duly recognized labor union for over 2,000 professional football players in the NFL. Pet. (ECF No. 1) ¶ 4. Petitioner NFLPI is the for-profit licensing and marketing arm of the NFLPA that, among other things, markets and sells licenses to consumer-product manufacturers to use the names, likenesses and other identifying attributes of NFL players. *Id.* ¶ 5. All NFL players assign to NFLPA/PI the exclusive right to license their identity rights to third parties for use in various consumer products, including video games, trading cards and apparel. *Id.*

One of those licensees was Respondent Saber—a worldwide video game publisher and developer. *See id.* ¶ 6.

### B.    The License Agreement and Agreement to Arbitrate

On May 23, 2023, the parties executed the License Agreement. *Id.* ¶ 7. Through the License Agreement, NFLPA/PI and their agent OneTeam Partners (together, the arbitral "Claimants") granted Saber the right to use the names, images, likenesses, jersey numbers and other identifying attributes of NFL players and the NFLPA's logos in the creation of one arcade-style "multiplayer football game"—until the date of the License Agreement's expiration, February 28, 2026, unless earlier terminated in accordance with the provisions of the Agreement. *Id.* In exchange for their intellectual property rights, Saber agreed to pay Claimants royalties on game sales subject to certain minimum guaranteed payments to be remitted in installments over the life of the License Agreement. *Id.* ¶ 8.

Relevant here, "Section 11.H of the License Agreement provides, ███████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

2

█████████" Ex. 1[1] (Corrected Final Award) at 18–19 (quoting Ex. 2 (License Agreement) § 11.H); Pet. ¶ 11.[2] The agreed-upon Comprehensive Arbitration Rules and Procedures ("J.A.M.S. Rules") also permit an award of attorney fees. *See* J.A.M.S. Rule 24(f)–(g); Ex. 1 at 19. Further, the License Agreement and New York law provide for interest payments for past due amounts. *See* Ex. 1 at 17–18; Pet. ¶ 11.

Section 10.B. of the License Agreement (titled "Dispute Resolution") contains the agreed-upon procedures "[i]f any dispute ar[ose] relating to either Party's rights or obligations under th[e] Agreement, and the Parties [we]re unable to resolve the dispute in the ordinary course of business." *See* Ex. 2 § 10.B.; Pet. ¶ 9. If attempts to resolve the disagreement failed, "the dispute [would] be finally resolved by binding arbitration in accordance with the Comprehensive Arbitration Rules and Procedures of J.A.M.S." *See* Ex. 2 § 10.B.; Pet. ¶ 9. The parties further agreed that the arbitration would be held before three neutral persons experienced in intellectual property licensing and product distribution and would take place in New York, New York, unless otherwise agreed among the parties. *See* Ex. 2 § 10.B.; Pet. ¶ 9. The parties also expressly agreed that "judgment on the arbitration award may be entered in any court having jurisdiction thereof." *See* Ex. 2 § 10.B.; Pet. ¶ 10.

## C.    The Dispute

On September 30, 2024, Claimants invoked their right to terminate the License Agreement after Saber stopped paying the guaranteed amounts owed under the Agreement and failed to timely

---

[1] All exhibits are appended to the accompanying Declaration of David L. Greenspan.

[2] Saber conceded during the arbitration that the License Agreement provides for an award of costs, including attorneys' fees, incurred in the collection of outstanding payments—the exact costs NFLPA/PI are now being forced to incur in seeking to confirm the Corrected Final Award. *See, e.g.*, Ex. 4 (Saber's Jan. 8, 2026 Reply Brief on Damages) at 1–2 (acknowledging that Section 11.H. "████████████████████████"); Pet. ¶ 11 n.1.

3

cure such breaches. Pet. ¶ 11.

On November 19, 2024, pursuant to the License Agreement's dispute resolution procedures, Claimants filed a Demand for Arbitration ("Demand") with J.A.M.S. in accordance with the J.A.M.S. Rules to address Saber's failure to comply with its payment obligations under the License Agreement and continuing use of NFLPA/PI's intellectual property post-termination. *Id.* ¶ 12. Claimants' Demand asserted four causes of action against Saber: (i) breach of contract; (ii) trademark infringement, false designations of origin, false endorsements, false advertising and passing off under the Lanham Act; (iii) misappropriation of rights of publicity; and (iv) declaratory judgment. *Id.* ¶ 13.

On December 17, 2024, Saber filed a Response to the Demand, which asserted counterclaims against Claimants for (i) fraud; (ii) fraud in the inducement; (iii) breach of the duty of good faith and fair dealing; and (iv) breach of contract. *Id.* ¶ 14. Saber amended its Response and Counterclaims on April 14, 2025, and withdrew its standalone fraud claim. *Id.*

Pursuant to J.A.M.S. Rules, J.A.M.S. provided the parties with a list of ten neutral arbitrator candidates, each of whom represented that he or she had the requisite experience in licensing and product distribution and referred the parties to the candidates' biographies on J.A.M.S.' website for the purpose of assessing their respective qualifications and credentials. *Id.* ¶ 15. Each side was then permitted to strike three names from the list and rank the remaining candidates in order of preference. *Id.*

J.A.M.S. appointed the three remaining arbitrators with the highest composite ranking (the Panel): (i) Ms. Caroline Antonacci, Esq. (Panel Chair) (former Director and Special Master for the New York State Supreme Court, Appellate Division, First Department's Special Masters Mediation Program with nearly 25 years of experience as a mediator, arbitrator and special

4

master); (ii) Hon. Theodore H. Katz (Ret.) (United States Magistrate Judge in the Southern District of New York for 21 years); and (iii) Ms. Vivien B. Shelanski, Esq. (J.A.M.S. panelist for over 25 years). *Id.* ¶ 16. No party objected to any member of the Panel. *Id.* ¶ 17.

Several months of discovery ensued. Claimants sought sanctions over Saber's discovery conduct, and "the Panel was troubled by [Saber's] discovery efforts and production." Ex. 1 at 12; Pet. ¶ 18. Thereafter, "the Parties jointly requested permission to brief what they acknowledge[d] [wa]s the 'core issue' in this Arbitration and contend[ed] c[ould] be resolved as a matter of law without an evidentiary hearing." Ex. 1 at 6; Pet. ¶ 18. Specifically, "[t]he Parties were granted permission to brief the following question: 'What if any monies are owed to Claimants pursuant to the Minimum Guaranteed Payments provision of the License Agreement?'" Ex. 1 at 6; Pet. ¶ 18. The Panel thus granted leave for the parties to file the following motions: (i) the parties' cross motions for summary disposition on the merits of Claimants' breach-of-contract and declaratory-relief claims, and (ii) Claimants' motion seeking sanctions for Saber's discovery violations and/or dismissal of Saber's counterclaims on the merits. Ex. 1 at 6; Pet. ¶ 19. The parties thereafter cross-moved for summary disposition, filed six briefs, and the Panel heard oral argument on October 21, 2025. *See* Ex. 1 at 6–7; Pet. ¶ 19.

On November 11, 2025, the Panel issued an interim award ("Interim Award") granting Claimants' motion for summary disposition on the merits of their breach-of-contract claim and granting Claimants' motion to dismiss Saber's counterclaims, finding that Saber's contractual arguments for not paying all guaranteed amounts were "strained" and erroneous and that Saber's counterclaims were meritless as a matter of law. *See* Ex. 3 (Interim Award) at 9–10; Pet. ¶ 20. The Panel denied as moot Claimants' motion seeking sanctions for Saber's discovery violations and denied with prejudice Saber's motion for summary disposition as to Claimants' claims. *See* Ex. 3

5

at 9–10; Pet. ¶ 20. The Interim Award indicated that the Panel's "further determinations" would be "embodied in a Final Award which [would] also incorporate the contents of the Interim Award." *See* Ex. 3 at 14; Pet. ¶ 21.

On November 17, 2025, Claimants withdrew their Lanham Act and right-of-publicity claims so that the only remaining issues in the arbitration were the amount of damages, interest, disbursements and costs, and attorneys' fees Saber owed Claimants. Pet. ¶ 22. The Panel thereafter held a status conference, the parties submitted four more briefs on the remaining issues, and the Panel held oral argument on January 15, 2026. *See* Ex. 1 at 15–16; Pet. ¶ 23. Following oral argument, the Panel ordered yet more briefing concerning Claimants' requests to recover their costs incurred in collecting the outstanding amounts owed by Saber as well as interest on the outstanding guaranteed payments. *See* Ex. 1 at 16; Pet. ¶ 23. The parties made those submissions as requested, and the record was closed and submitted for final determination on March 2, 2026. Ex. 1 at 16; Pet. ¶ 24.

On March 29, 2026, the Panel rendered its final award ("Final Award"). *See* Pet. ¶ 25. The parties, however, did not receive the Final Award until April 30, 2026.[3] *See id.* The Final Award was subsequently corrected on May 22, 2026. *See generally* Ex. 1. The 21-page Corrected Final Award, like the Final Award, "merged and incorporated" the Interim Award addressing liability issues and also addressed the amount of damages, interest, attorneys' fees, costs and expenses (including J.A.M.S. arbitration fees, costs, and Panel compensation and expenses) Saber owes Claimants. *Id.* at 3; Pet. ¶ 25. The Corrected Final Award held that Saber owes Claimants:

---

[3] The month-long lapse was a result of Saber stating it would not pay an outstanding J.A.M.S. bill. As a result, Claimants were forced to pay that amount (for Saber) in order for J.A.M.S. to release the Final Award. The Corrected Final Award served to update the amount owed by Saber to reflect that Claimants had been forced to pay the invoice on Saber's behalf. The Corrected Final Award also included typographical changes. *See* Pet. ¶ 25 n.2.

6

- $1.75 million in outstanding guaranteed payments under the License Agreement;

- Interest on three of the outstanding guaranteed payments at the rate set forth in the License Agreement (totaling $286,774.19 as of May 22, 2026);

- Interest on six of the outstanding guaranteed payments at the rate set forth in N.Y. C.P.L.R. § 5004 (totaling $172,947.93 as of May 22, 2026);[4]

- $878,216 in attorneys' fees;

- $40,936 in disbursements and costs; and

- $102,953.69 in J.A.M.S. arbitration fees, costs and Panel compensation and expenses.

Ex. 1 at 3, 20–21; Pet. ¶ 26.

Consistent with the License Agreement, the Corrected Final Award "resolves all issues submitted for decision in th[e] proceeding and is in full settlement of all claims submitted to th[e] Arbitration." Ex. 1 at 21; Pet. ¶ 28.

## ARGUMENT

### A.    The Corrected Final Award Should Be Confirmed.

NFLPA/PI ask this Court for an order confirming the Corrected Final Award. *See* 9 U.S.C. § 9 ("[A]ny party to the arbitration may apply to the court so specified for an order confirming the award."). Under the FAA, the Panel's decision is entitled to "great deference." *See Koonge v. Citibank, N.A.*, 2026 WL 1735180, at *1 (S.D.N.Y. June 16, 2026) (quotation marks omitted) (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003)). The "court is bound by the arbitrator[s'] factual findings, interpretation of the contract and suggested remedies," and "is limited to determining if there are grounds for vacating the award

---

[4] As to both interest amounts owed, the Panel specified that "Claimants are awarded pre-award and post-award interest at the rates set forth [in the Corrected Final Award], accruing from the date payment was due or became due based on acceleration due to termination, ***and continuing until the amounts owed by Respondent are paid in full***." Ex. 1 at 18 (emphasis added); Pet. ¶ 27.

under [the FAA], and if the arbitrator[s] [are] arguably construing or applying the contract and acting within the scope of [their] authority." *See id.* (citations and internal quotation marks omitted). "[A]ll that is required to confirm an award on a timely petition to confirm" is a "barely colorable justification for the outcome reached." *Id.* (citation and quotation marks omitted); *see also Carroll v. Wells Fargo Clearing Servs., LLC*, 2021 WL 634721, at \*5 (S.D.N.Y. Feb. 17, 2021) (same). There can be no doubt that the Corrected Final Award clears this bar.

The Corrected Final Award was issued in accordance with the parties' agreement to arbitrate and their agreement to submit dispositive motions to the Panel. The Corrected Final Award reflects the Panel's thoughtful consideration of the parties' arguments, as developed through extensive briefing and oral argument. That careful deliberation is reflected in the cogent, well-reasoned, 21-page Corrected Final Award. It thus easily satisfies the "barely colorable justification" standard. *See Evan K. Halperin Revocable Living Tr. v. Charles Schwab & Co. Inc.*, 2023 WL 8253681, at \*1 (2d Cir. Nov. 29, 2023) ("This Court has repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process.") (citation and quotation marks omitted).

This motion is also timely. The FAA requires that a motion to confirm be filed "within one year after the award is made." 9 U.S.C. § 9. The Corrected Final Award was issued on May 22, 2026, and this motion is filed well within the one-year statutory window.

There likewise are no grounds for vacating the award. *See* 9 U.S.C. § 10(a). The Panel was comprised of three qualified, impartial (and amply experienced) neutrals appointed by J.A.M.S. There was no "corruption, fraud, or undue means," or "evident partiality." *See id.* § 10(a)(1)–(2). On the contrary, Saber agreed to each Panel member without objection. The parties submitted a total of 10 briefs to the Panel addressing their summary disposition motions and the damages,

costs, and fees issues that ultimately culminated in the Corrected Final Award. *See* Ex. 1 at 6–7, 16. In addition, the Panel held multiple hearings on the issues addressed in the Corrected Final Award. The Panel never "refus[ed] to hear evidence pertinent and material to the controversy" or otherwise prejudiced any party. *See* 9 U.S.C. § 10(a)(3). And the Panel exercised authority expressly conferred to it by the License Agreement in "finally resolv[ing]" this "dispute [] relating to [the parties'] rights [and] obligations under th[e] Agreement," including the payment of attorneys' fees and interest. *See* Ex. 2 § 10.B; 9 U.S.C. § 10(a)(4).

Against this backdrop, the Court should confirm the well-founded Corrected Final Award. *See, e.g.*, *CFS 12 Funding LLC v. Wiesen*, 2023 WL 6458929, at *4 (S.D.N.Y. Oct. 4, 2023) (granting motion to confirm arbitration award where "[respondent]'s submissions d[id] not satisfy the heavy burden required to vacate the Awards"); *Kane v. Nat'l Farm Wholesale Fruit & Vegetable Corp.*, 2019 WL 1585101, at *2 (S.D.N.Y. Apr. 12, 2019) (granting motion to confirm where the award was "a detailed, well-reasoned, ten-page decision" evincing the arbitrator's "thorough understanding of the subject matter and issues in dispute"); *Herrenknecht Corp. v. Best Rd. Boring*, 2007 WL 1149122, at *2 (S.D.N.Y. Apr. 16, 2007) (granting motion to confirm award because there was "no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law").

**B.      NFLPA/PI's Reasonable Attorneys' Fees and Costs for Commencing This Action Should Be Awarded.**

In addition to confirming the Corrected Final Award, this Court should award the attorneys' fees and costs incurred by NFLPA/PI in connection with this action. While "[t]he general rule in the United States is that each party must pay its own legal fees," "it is well settled that [a]n exception to this rule is the existence of an agreement between the parties that legal fees are recoverable." *Evan K. Halperin Revocable Living Tr. v. Charles Schwab & Co.*, 2022 WL

4334655, at *9 (S.D.N.Y. Sept. 19, 2022) (citations and internal quotation marks omitted), *aff'd*, 2023 WL 8253681 (2d Cir. Nov. 29, 2023).

Here, the License Agreement provided that "██████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████" *See* Ex. 2 § 11.H.[5] In the Corrected Final Award, the Panel concluded that Claimants were entitled to recover their costs and attorneys' fees, and that the rates and fees charged by Claimants' counsel in the arbitration were reasonable with just one exception,[6] which resulted in the Panel reducing Claimants' requested fee award by 5%. *See* Ex. 1 at 18–19.

Moreover, Saber disputed that the License Agreement entitled Claimants to recover their attorneys' fees for prosecuting and defending the underlying arbitration by repeatedly arguing that the License Agreement merely permitted Claimants to recover "██████████████████." *See* Ex. 4 at 1–2; *id.* at 9 (referring to 11.H. as a "███████████" provision "████████████ ████████████████████████████████████████████████████████████████████ ████████████") (quoting Ex. 2 § 11.H.) (alterations in original); *id.* at 10 (acknowledging that "████████████████████████████████████████████████████████████████ ████████"); Pet. ¶ 11 n.1. Such costs of collection are the very costs Saber forces NFLPA/PI to incur now by refusing to comply with the Corrected Final Award. NFLPA/PI respectfully submit that the Court should hold Saber to its prior concessions that such costs of collection are recoverable under the License Agreement.

---

[5] The agreed-upon J.A.M.S. Rules also empowered the Panel to award reasonable attorneys' fees. *See* J.A.M.S. Rule 24(f)–(g); Ex. 1 at 19.

[6] The Panel concluded that some appearances before the Panel by Claimants were overstaffed, and thus reduced the requested amount by 5%. *See* Ex. 1 at 19.

NFLPA/PI respectfully request that the Court award their reasonable attorneys' fees and costs incurred in this action, and that NFLPA/PI be permitted to make further submissions setting forth the amount of attorneys' fees owed after the Court rules on this motion.

## CONCLUSION

For all the foregoing reasons, the Court should grant NFLPA/PI's motion to confirm the Corrected Final Award and award NFLPA/PI the attorneys' fees and costs associated with this action.

Dated: July 24, 2026                    Respectfully submitted,

**WINSTON TAYLOR LLP**

*/s/ David L. Greenspan*
David L. Greenspan
Sarah L. Viebrock
Neha Vyas
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
david.greenspan@winstontaylor.com
sarah.viebrock@winstontaylor.com
neha.vyas@winstontaylor.com

*Counsel for Petitioners NFLPA and NFLPI*

11

## <u>CERTIFICATION OF WORD COUNT</u>

I hereby certify that the number of words in this memorandum of law complies with Local Civil Rule 7.1(c). The memorandum contains 3,008 words excluding the caption, any index, table of contents, table of authorities, signature blocks, and this certificate, as counted by Microsoft Word.

Dated: July 24, 2026

*/s/ David L. Greenspan*
David L. Greenspan
